ADOPTION OF LORIN
(and a companion case[1]).

No. 99-P-1444.

Hampden. October 6, 2000. - December 4, 2000.

Present: GREENBERG, KAPLAN, & DUFFLY, JJ.

*Adoption,* Dispensing with parent's consent, Visitation rights. *Parent and Child,* Adoption, Dispensing with parent's consent to adoption. *Minor,* Adoption, Visitation rights.

This court concluded that, in light of the holding of *Adoption of Vito,* 431 Mass. 550 (2000), an adoption case should be remanded for consideration of the children's best interests with respect to postadoption visitation by the mother. [563]

PETITIONS filed in the Hampden Division of the Probate and Family Court Department on July 31, 1997.

The cases were heard by *David M. Fuller,* J.

*Virginia A. Peel,* Special Assistant Attorney General, for Department of Social Services.

*Dorothy Meyer Storrow* for Sheila.

*William B. Tobey* for Lorin.

KAPLAN, J. In the nature of this appeal and its outcome, we need not state the facts in any detail. The general scene is the not unfamiliar one of the biological father gone; the mother lacking in education, diminished by bad habits, overburdened by children (here six by her twenty-third year); the children handicapped through poor upbringing, squalid surroundings, and poverty. The general scene is lightened here by hints of improvement on the part of the mother and daughter Sheila.

The Department of Social Services (DSS) commenced the present proceeding in Probate Court under G. L. c. 210, § 3, seeking decrees dispensing with the need for parental consent to the future adoptions of Lorin (d.o.b. May 7, 1992) and Sheila

[1]Adoption of Sheila. Both names are fictitious.

(d.o.b. September 7, 1994), brother and sister. When, at the conclusion of the proceeding below in April, 1999, decrees to such effect were entered, the children were living in separate foster homes, and they remain so today. Lorin is in parlous psychological and developmental condition, and adoptive parents will have to be recruited for him. Sheila is in better condition on both scores and has fared well with her foster parents, who likely will become her adoptive parents.

The putative biological father of the children has not objected to the proceeding or participated in it. As to him, a c. 210, § 3, petition was earlier allowed in February, 1998.

There is no dispute with that part of the court's decrees of April, 1999, dispensing with the mother's consent which finds the mother unfit to parent the children. The mother does not appeal.

A problem remains about the further provision of the decrees which (in effect adding to the adoption plans) reserves to the mother the right to postadoption visitation with the children. (The form of the decree, identical for both children, is set out in the margin.[2] )

DSS argued in its briefs on appeal from this phase of the decrees that the Probate Court lacked the power to deal with the issue of parental visitation during the postadoptive period; the statutes, said DSS, did not affirmatively so empower the court, in fact the statutes implied a negative, which excluded the existence and exertion of a general equity power in the court to provide for such visitation. The children in their briefs argued, to the contrary, for an equity solution.

After the briefs were filed, the Supreme Judicial Court held in *Adoption of Vito*, 431 Mass. 550 (2000), that the Probate Court, by virtue of its general equity power, even in the absence of relevant statute, could reserve postadoption visitation rights to the mother on proper terms when in the best interests of the child. See *Adoption of Greta*, 431 Mass. 577 (2000). DSS has perforce confessed error in its view of the matter.

---

[2] "It is further decreed that limited and supervised postadoption visitation between [the mother] and . . . [the] minor child would serve the child's best interests. The time and method as to this visitation are left to the discretion of the adoptive parents. In order to take advantage of this visitation, [the mother] shall contact the [department] who will be responsible for coordinating a time, place and supervisor with the adoptive parents and relaying the information to [the mother]. Should [the mother] refuse to participate in these visitation opportunities, the adoptive parents may cease contact with [the mother]."

The *Vito* opinion, however, lays it down — lest there be undue "intrusion on the prerogatives of the adoptive family," 431 Mass. at 564 n.25 — that the postadoption visitation right is to be accorded the biological parent only when there is a current and substantial bond between the parent and the child, so that a disruption of the bond would not be in the child's best interests. See 431 Mass. at 563.[3]

It is uncertain whether the judge below, although correctly anticipating (without discussion) the Supreme Judicial Court ruling on the question of the court's power, applied as stringent a test, as is now required by *Vito*, in making his decision that postadoption visitation by the mother would be in the best interests of either Lorin or Sheila. Indeed, DSS had argued at some length in its briefs (as an alternative ground for reversal) that the facts of record did not support the judge's favorable conclusion as to best interests. The children sought to support that conclusion. DSS in oral argument said its position that the facts were inadequate to sustain the judge's best-interests conclusion was enhanced in light of the standard announced by *Vito*. .

On the whole, after considering the entire record as it now stands, including particularly the judge's findings, we accept the view emerging at oral argument that the case should be remanded to the lower court to reexamine the decision regarding each child's best interests, with liberty to receive any additional evidence on the issues that may be thought necessary or advisable.

Some question has been raised (assuming the ultimate decision on best interests is favorable) about the extent to which the court can direct that DSS assist in or supervise the visitation, or can go any distance in itself prescribing the times, place, etc., of the visitation. A clash on the question of DSS assistance may well be avoided, for, even if a duty of assistance on the part of DSS in the degree reasonably needed in the postadoption period does not flow naturally from the basic decision of *Vito*, the DSS would likely, of its own motion, voluntarily provide such limited service, if needed, as part of its regular concern to maintain the adoptive family as a healthy, functioning endeavor — just as it

---

[3] "[A] judicial order for postadoption contact may be warranted where the evidence readily points to significant, existing bonds between the child and a biological parent, such that a court order abruptly disrupting that relationship would run counter to the child's best interests."

assists many ordinary, nonadoptive families. Again, whether the court should attempt to fashion any details of the visitation calls for collaborative reasoning with the parties. We think also the court and the parties should consider whether the provisions worked out in the decree on remand should take effect in the interim before adoption and apply continuously through adoption.

Apparently there was no demand below for a declaration of postadoption visitation rights as between the siblings, and the judgment appealed from does not carry such a provision. The judge's findings suggest that he favored siblings' visitation which at surface appears easier to justify on the record facts in this case than the mother's visitation. The children's briefs ask for an express adjudication of the matter. It may be considered on remand. The court in *Vito* mentions a possible statutory basis for the court's authority in siblings' postadoption visitation. See 431 Mass. at 564 n.25, citing G. L. c. 119, § 23.[4] Should this source fail, then under *Vito* resort to equity may be considered. Clearly, the inclination should be toward a correspondence, not divergence, between the two forms of visitation on the issue of the power of the Probate Court (and the ancillary question of DSS assistance).[5]

The case will be remanded to the Probate Court which will proceed in conformity with the foregoing opinion.

*So ordered.*

---

[4]As amended (by St. 1997, c. 43, §§ 97, 98), G. L. c. 119, §§ 23, 26, make provision for postadoption sibling visitation when the siblings "are separated through adoption or long-term placements in foster care." The parties here contest whether the 1997 amendments authorize a Probate Court judge in a G. L. c. 210, § 3, proceeding to order postadoption sibling visitation. In this regard, we note that a proposal to amend c. 210 akin to St. 1997, c. 43, §§ 97, 98, was vetoed by the Governor who stated in his veto message (of St. 1997, c. 43, § 131, on July 10, 1997): "We think it is a mistake to give the Probate Court jurisdiction over visits between children whose adoption decrees are final and their siblings. The Probate Court has urged us to veto this section."

[5]At present, before adoptions, both forms of visitation are taking place, with DSS help available.